UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------X
JOSEPH HAFEZ, AHMED AHMED, and
AHMED ELSAFTI,

       Plaintiffs,     Civil Case No: 3:16-cv-5612

   -against-

PIZZA HUT OF AMERICA, INC.,
PIZZA HUT OF AMERICA, LLC,
AMERICAN RESTAURANT PARTNERS, L.P.,   **COMPLAINT**
AMERICAN PIZZA PARTNERS, L.P.,
RMC PARTNERS, L.P.,
RMC AMERICAN MANAGEMENT, INC.,
RESTAURANT MANAGEMENT COMPANY OF
WICHITA, INC.,         Plaintiffs Demand a
RESTAURANT MANAGEMENT COMPANY, INC.,  Trial by Jury
OKLAHOMA MAGIC, L.P., and
KAREN RYAN, individually,

      Defendants.
------------------------------------------------------------------X

   Plaintiffs, JOSEPH HAFEZ (hereinafter referred to as "HAFEZ"), AHMED

AHMED (hereinafter referred to as "AHMED"), and AHMED ELSAFTI (hereinafter

referred to as "ELSAFTI") (hereinafter collectively referred to as "Plaintiffs"), by and

through their attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of

Defendants, PIZZA HUT OF AMERICA, INC. (hereinafter referred to as "PHI"), PIZZA

HUT OF AMERICA, LLC (hereinafter referred to as "PHL"), AMERICAN

RESTAURANT PARTNERS, L.P. (hereinafter referred to as "ARP"), AMERICAN

PIZZA PARTNERS, L.P. (hereinafter referred to as "APP"), RMC PARTNERS, L.P.

(hereinafter referred to as "RMCP"), RMC AMERICAN MANAGEMENT, INC.

(hereinafter referred to as "RMCAM"), RESTAURANT MANAGEMENT COMPANY

OF WICHITA, INC. (hereinafter referred to as "RMCW"), RESTAURANT

MANAGEMENT COMPANY, INC. (hereinafter referred to as "RMC"), OKLAHOMA

MAGIC, L.P. (hereinafter referred to as "OKM") (hereinafter collectively referred to as

"PIZZA HUT"), and KAREN RYAN, individually, upon information and belief, as

follows:

## NATURE OF CASE

1. Plaintiffs bring this action, charging that the Defendants violated Plaintiffs' rights

   pursuant to  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§

   2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.

   L. No. 102-166) ("Title VII"), 42 U.S.C. §1981, as amended by the Civil Rights Act

   of 1991, the Americans with Disabilities Act of 1990 ("ADA"), as amended, and to

   remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), based

   upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of*

   *America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory

   and injunctive relief and damages to redress the injuries that Plaintiffs have suffered

   as a result of, *inter alia*, race discrimination, national origin discrimination, religious

   discrimination, and disability discrimination, together with hostile work environment,

   retaliation and unlawful termination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal

   Question under Title VII, 42 U.S.C. §1981, and the ADA. The Court also has

jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about December 28, 2015, Plaintiffs submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about July 1, 2016, Plaintiffs received a Right to Sue Letter from the EEOC.

6. Plaintiffs satisfied all administrative prerequisites and are filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8. Plaintiff JOSEPH HAFEZ is an individual man who is a resident of the State of New Jersey, County of Middlesex.

9. Plaintiff AHMED AHMED is an individual man who is a resident of the State of New Jersey, County of Middlesex.

10. Plaintiff AHMED ELSAFTI is an individual man who is a resident of the State of New Jersey, County of Union.

11. Plaintiffs are Egyptian and Muslim.

12. Defendant PIZZA HUT OF AMERICA, INC. is a foreign for-profit corporation duly existing by the virtue and laws of the State of Delaware that does business in the State of New Jersey.

13. Defendant PIZZA HUT OF AMERICA, LLC is a foreign limited liability company duly existing by the virtue and laws of the State of Delaware that does business in the State of New Jersey.

14. Defendant AMERICAN RESTAURANT PARTNERS, L.P. (hereinafter referred to as Defendant and/or "RESTAURANT PARTNERS") is a foreign limited partnership duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

15. Defendant AMERICAN PIZZA PARTNERS L.P. (hereinafter referred to as Defendant and/or "PIZZA PARTNERS") is a foreign limited partnership duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

16. Defendant RMC PARTNERS, L.P. (hereinafter referred to as Defendant and/or "RMC PARTNERS") is a foreign limited partnership duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

17. Defendant RMC AMERICAN MANAGEMENT, INC. (hereinafter referred to as Defendant and/or "RMC AM") is a foreign for-profit corporation duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

18. Defendant RESTAURANT MANAGEMENT COMPANY, INC. (hereinafter referred to as Defendant and/or "RMC") is a foreign for-profit corporation duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

19. Defendant RESTAURANT MANAGEMENT COMPANY OF WICHITA, INC. (hereinafter referred to as Defendant and/or "RMC WICHITA") is a foreign for-profit corporation duly existing by the virtue and laws of the State of Kansas that does business in the State of New Jersey.

20. At all times material, Defendants, PIZZA HUT OF AMERICA, INC., PIZZA HUT OF AMERICA, LLC, AMERICAN RESTAURANT PARTNERS, L.P., AMERICAN PIZZA PARTNERS, L.P., RMC PARTNERS, L.P., RMC AMERICAN MANAGEMENT, INC., RESTAURANT MANAGEMENT COMPANY OF WICHITA, INC., RESTAURANT MANAGEMENT COMPANY, INC., and OKLAHOMA MAGIC, L.P. own and operate numerous locations of a restaurant commonly known as "Pizza Hut." The store locations relevant to this matter are located in Edison, New Jersey and South Plainfield, New Jersey

21. At all times material, Plaintiffs were jointly employed by PIZZA HUT.

22. At all times material, KAREN RYAN was and is the Area Manager of PIZZA HUT's Edison, New Jersey and South Plainfield, New Jersey locations.

23. At all times material, RYAN had supervisory authority over Plaintiffs with regard to their employment.

## MATERIAL FACTS

## MATERIAL FACTS AS TO PLAINTIFF JOSEPH HAFEZ

24. Throughout Plaintiff HAFEZ's employment, Defendants subjected him to numerous acts of *inter alia*, discrimination, retaliation and unlawful employment practices, including, but not limited to the following:

25. In or around June 2007, Plaintiff HAFEZ began working for PIZZA HUT as a General Manager of their 2002 Lincoln Highway, Edison, New Jersey location (hereinafter referred to as "The Edison Store") .

26. PIZZA HUT's employee MIKE GARLAND (hereinafter referred to as "GARLAND") was Plaintiff's Area Manager from June 2007 until January 2015. At this time, GARLAND became the Area Manager of another area nearby.

27. Under GARLAND's supervision, Plaintiff received exemplary reviews. In fact, in 2012 Plaintiff HAFEZ was awarded the "All-American" award, an award given to the top ten (10) performing stores in the country. Upon information and belief, PIZZA HUT owns and operates over 130 stores nationwide.

28. In or around January 2015, RYAN replaced GARLAND as Area Manager.

29. RYAN almost instantly began making inappropriate and discriminatory comments towards Plaintiff HAFEZ such as "I know I'll have a hard time dealing with you and your brother over there."

30. Plaintiff HAFEZ asked RYAN why she would have a hard time with him, as well as whom she was calling his "brother."

31. RYAN told Plaintiff HAFEZ that she was referring to Plaintiff AHMED as Plaintiff HAFEZ' "brother," because they were "both Egyptian."

32. Furthermore, RYAN stated she would have a hard time dealing with them because, "You both have a language barrier."

33. As mentioned above, Plaintiffs are all Egyptian. There is a well-known terrorist organization in Egypt called the "Muslim Brotherhood."

34. Plaintiffs were shocked and appalled that RYAN, aware of the fact that they were Egyptian and Muslim, would refer to them as "brothers," clearly insinuating their membership to a known terrorist group.

35. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

36. In or about February 2015, Plaintiff HAFEZ complained to PIZZA HUT regarding the discriminatory treatment from RYAN.

37. RYAN would repeatedly refer to Plaintiff HAFEZ, Plaintiff AHMED, and Plaintiff ELSAFTI as "brothers" which made Plaintiffs feel attacked and uncomfortable.

38. In fact, there were several Hispanic employees in both Plaintiff HAFEZ's and Plaintiff AHMED's stores. However, RYAN never referred to any of the Hispanic employees as "brothers."

39. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

40. Plaintiff became unsettled and the work environment turned hostile.

41. In addition to Plaintiffs, RYAN constantly made discriminatory remarks towards the Hispanic employees in Plaintiffs' stores.

42. On one occasion, Plaintiff HAFEZ introduced RYAN to his shift manager, SEGUNDO (last name unknown). In front of Plaintiff HAFEZ and SEGUNDO, RYAN remarked, "Segundo? What kind of name is that? We name people John, Jason! This is America!"

43. RYAN repeatedly asked Plaintiff HAFEZ if the Hispanic employees in The Edison Store were illegal immigrants. Plaintiff HAFEZ repeatedly assured RYAN that there

were no illegal immigrants employed in The Edison Store and that the citizenship status of every employee is fully investigated before they are hired.

44. At every given opportunity, RYAN would belittle Plaintiff HAFEZ and comment on his speech and accent.

45. On one occasion, in or around March 2015, Plaintiff HAFEZ hung a poster on the wall and told RYAN, "I hanged it." RYAN said loudly for all to hear, "HUNG IT. We say hung it, learn proper English."

46. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

47. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

48. Around March 2015, RYAN instructed Plaintiff HAFEZ to administer a performance test to several employees. Under the previous supervision of GARLAND, Plaintiff HAFEZ administered a Spanish version of the same test to his Spanish speaking employees. Plaintiff HAFEZ asked RYAN if he could administer the Spanish version as was done in the past. RYAN brusquely responded, "This is Pizza Hut in America, not in Mexico."

49. At every given opportunity, RYAN would harass Plaintiff HAFEZ and comment on the fact that he came from a different country.

50. On one occasion, in or around April 2015, RYAN approached Plaintiff saying "I was born in this country and we do things differently than you people."

51. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

52. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

53. In or around April 2015, RYAN met with a potential applicant for the Assistant Manager Position in The Edison Store. As part of the interview process, RYAN administered a "knowledge test" to the potential applicant. RYAN reviewed the applicant's score with Plaintiff HAFEZ and stated that the applicant scored a forty (40) percent. Plaintiff HAFEZ asked RYAN if that score was sufficient to hire the applicant. RYAN snickered, "That's the same language barrier you and your brother have!"

54. In fact, Plaintiff HAFEZ informed RYAN that the test was primarily math questions, and that he scored an eighty-eight (88) percent on the same test.

55. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

56. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

57. In or around April 2015, PIZZA HUT held a training meeting for General Managers in the area.

58. During the meeting, PIZZA HUT introduced Plaintiff HAFEZ to a new product that Pizza Hut planned to offer, the "hot-dog stuffed crust pizza." RYAN instructed Plaintiff HAFEZ to try the hot-dog product. However, Plaintiff HAFEZ informed RYAN that he could not eat the hot-dog because his religion did not permit him to eat pork.

59. RYAN responded, "That's a stupid religion."

60. Defendants discriminated against Plaintiff HAFEZ on the basis of his religion.

61. Defendants subjected Plaintiff HAFEZ to a hostile work environment on the basis of his religion.

62. Plaintiff HAFEZ was shocked and disgusted that RYAN would make such a reprehensible comment about his religious beliefs.

63. In or around June 2015, RYAN accompanied Plaintiff HAFEZ to a large community gathering for "Edison Family Day." Through The Edison Store, Plaintiff HAFEZ had been a co-sponsor of the event for several years and provided free pizza for the families in attendance.

64. During the event, Plaintiff HAFEZ ran into an acquaintance of his. They engaged in friendly conversation for several minutes. At or about the time of their conversation, a recording of the National Anthem was being played at the event.

65. RYAN saw Plaintiff HAFEZ speaking with his acquaintance and stormed over to Plaintiff screaming in front of everyone, "You don't have any fucking respect for this country! You ask me to respect your fucking culture but you don't respect our flag, our country! You know how many people died for this flag?!"

66. Plaintiff HAFEZ, appalled at RYAN's outburst, attempted to quell the situation and calmly reassured RYAN, stating, "I'm proud to be an American citizen and apologize that I didn't hear the Anthem being played."

67. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

68. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

69. Later that afternoon, Plaintiff HAFEZ attempted to introduce his wife to RYAN, but was completely ignored.

70. Plaintiff HAFEZ was offended that RYAN was treating him so disrespectfully. Plaintiff HAFEZ told RYAN that she was discriminating against him, treating him with disrespect, and asked if she could please change her tone with him, stop referring to him as "brother," as well as stop discriminating against the other Egyptian and Hispanic employees because they were all very unhappy with her.

71. Shortly thereafter, RYAN called a meeting with all of the General Managers, as well as Assistant Managers in her territory. RYAN started the meeting by saying to Plaintiff HAFEZ, "Until now, you saw my nice side. From now on, I'll show you my real side. You'll be feeling the same as my stores in Texas - the 'Bitch Karen' is coming and not going anywhere."

72. In or about July 2015, RYAN held another meeting of the General Managers and Assistant Managers.

73. Once again, RYAN screamed and belittled Plaintiff HAFEZ in front of everyone at the meeting.

74. During the course of their meeting, Plaintiff HAFEZ informed RYAN that he was able to purchase a piece of equipment for The Edison Store for approximately $2,200.00 less than the price given by RYAN's contractor. RYAN became irate and screamed, "You should just do what I tell you to do. I decide! I'm your boss! The only words that come out of your mouth should be, 'yes ma'am.'"

75. At the conclusion of her tirade, Plaintiff HAFEZ attempted to inform RYAN that her contractor was trying to cheat them. As a matter of fact, RYAN's contractor was a personal friend of hers.

76. RYAN cut him off and yelled, "Shut up now! Not another word from you!"

77. Although Plaintiff HAFEZ became increasingly offended, intimidated and stressed by RYAN's behavior, he endured the discrimination for fear of losing his job.

78. On or about September 2, 2015, the burglar alarm broke in The Edison Store. Plaintiff immediately contacted the alarm company and scheduled an appointment. However, the alarm company did not show up that day.

79. Later that night, the alarm company called Plaintiff to inform him of a false alarm that had been detected. The police were informed and investigated the scene, finding that it was in fact a false alarm.

80. In response, Plaintiff promptly sent a text message to RYAN, GARLAND, and the head of Human Resources, informing them that the alarm was broken and needed to be fixed.

81. The following morning, Defendants terminated Plaintiff HAFEZ.

82. RYAN informed Plaintiff that he was being terminated for several reasons, all of which were merely pretextual and retaliatory in nature.

83. In fact, there were several other General Managers that engaged in extreme misconduct, such as two General Managers were caught fraudulently reporting their inventory and cash. However, they were not even given a written or verbal warning.

84. Notably, one of those managers was brought in to replace Plaintiff HAFEZ.

85. Defendants discriminated against Plaintiff HAFEZ on the basis of his national origin, race, and religion.

86. Defendants subjected Plaintiff HAFEZ to a hostile work environment on the basis of his national origin, race, and religion.

87. Defendants retaliated against Plaintiff HAFEZ for his complaints of discrimination.

88. The above are just some of the examples of the pattern and practice of unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff HAFEZ.

## MATERIAL FACTS AS TO PLAINTIFF AHMED AHMED

89. Throughout Plaintiff AHMED's employment, Defendants subjected him to numerous acts of *inter alia*, discrimination, retaliation and unlawful employment practices, including, but not limited to the following:

90. In or around July 2007, Plaintiff AHMED began working for PIZZA HUT as the General Manager of their 5251 Stelton Road, South Plainfield, New Jersey location (hereinafter referred to as "The South Plainfield Store").

91. Defendants' employee GARLAND was Plaintiff's Area Manager from June 2007 until January 2015.

92. Under GARLAND's supervision, Plaintiff received exemplary reviews and in fact was awarded the "General Manger of the Year" award for 2014. Furthermore, in 2012 Plaintiff AHMED was awarded the "All-American" award, an award given to the top ten (10) performing stores in the country. Upon information and belief PIZZA HUT owns and operates over 130 stores nationwide.

93. In or around January 2015, RYAN replaced GARLAND as Area Manager.

94. RYAN almost instantly began making inappropriate and discriminatory comments towards Plaintiff AHMED such as "I know I'll have a hard time dealing with you and your brother over there."

95. Plaintiff AHMED asked RYAN why she would have a hard time with him, as well as whom she was calling his "brother."

96. RYAN told Plaintiff AHMED that she was referring to Plaintiff HAFEZ as Plaintiff AHMED's "brother," because they were "both Egyptian."

97. Furthermore, RYAN stated she would have a hard time dealing with them because, "You both have a language barrier."

98. As mentioned above, Plaintiffs are all Egyptian and Muslim. There is a well-known terrorist organization in Egypt called the "Muslim Brotherhood." Plaintiffs were shocked and appalled that RYAN, aware of the fact that they were Egyptian and Muslim, would refer to them as "brothers", clearly insinuating their membership to a known terrorist group.

99. Defendants discriminated against Plaintiff AHMED on the basis of his national origin, race, and religion.

100. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

101. RYAN would repeatedly refer to Plaintiff HAFEZ, Plaintiff AHMED, and Plaintiff ELSAFTI as "brothers" which made Plaintiffs feel attacked and uncomfortable.

102. In fact, there were several Hispanic employees in both Plaintiff HAFEZ' and Plaintiff AHMED's stores. However, RYAN never referred to any of the Hispanic employees as "brothers."

103. On numerous occasions, RYAN visited The South Plainfield Store and would completely ignore AHMED.

104. In or around February 2015, Plaintiff AHMED asked RYAN why she refused to speak to him. RYAN repeatedly told Plaintiff, "You don't understand what I'm saying because of your language barrier."

105. Plaintiff told RYAN on multiple occasions that he had been dealing with GARLAND for almost seven (7) years and GARLAND never had a problem communicating with him. RYAN retorted, "Well, I'm not sure how," and laughed in Plaintiff's face.

106. On or about March 10, 2015, RYAN visited The South Plainfield Store and made derogatory and discriminatory remarks regarding Plaintiff's religion.

107. The South Plainfield Store was the only location in the State of New Jersey that had a buffet. Over time, Defendants eliminated the buffet feature from almost all their restaurants; however, Plaintiff AHMED was allowed to keep his buffet because it remained profitable and was very popular with his customers.

108. The majority of Plaintiff's customer base was Muslim, Pakistani, and Indian. As a result of these customers religious beliefs, the majority of Plaintiff's customers had specific dietary restrictions. To accommodate their needs, Plaintiff AHMED had separate buffet tables, one for meat and one for non-meat (vegetarian).

109. Upon inspection of the separate buffet tables, RYAN demanded that Plaintiff change the arrangement of his buffet, which would cause the meat and non-meat products to be co-mingled.

110. Plaintiff AHMED informed RYAN that co-mingling the meat and non-meat products would be against his, and his customers', religion. RYAN told AHMED, "I don't care about your religion, this is America. We do things my way!"

111. Defendants discriminated against Plaintiff AHMED on the basis of his national origin, race, and religion.

112. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

113. Despite RYAN's hateful and egregious comments, Plaintiff attempted to explain that Defendants would lose a significant market share by disregarding the religious needs of their clientele and that it was discriminatory not to accommodate the customers' religion. However, RYAN cut AHMED off and barked, "I'm your boss. Shut up and do what I say immediately!"

114. Defendants discriminated against Plaintiff AHMED on the basis of his national origin, race, and religion.

115. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

116. In or about March 2015, a City Inspector (hereinafter referred to as "Inspector") examined The South Plainfield Store.

117. During the inspection, the Inspector found a junk pile located in the rear of the restaurant's property.

118. The Inspector stated that the junk pile needed to be cleared within ten (10) days or there would be a fine of $4,000.00.

119. Plaintiff AHMED immediately took photographs of the pile, and called RYAN to explain the situation.

120. RYAN instructed Plaintiff AHMED, "That is your fault. The store is like your home. You are responsible to clean it."

121. Plaintiff AHMED informed RYAN that the job was quite labor intensive and required the use of heavy machinery. In addition, Plaintiff made sure to inform RYAN that Plaintiff was 63 years old and would not be able to take care of it himself.

122. RYAN instructed Plaintiff, "I don't want to hear it Ahmed. You just say 'Yes ma'am' and do what I tell you!"

123. Plaintiff was appalled that a staff member - especially his supervisor - would order a man his age to perform such an arduous and labor intensive task.

124. Plaintiff submitted to RYAN's demands.

125. Defendants retaliated against Plaintiff AHMED because of his prior complaints of discrimination against RYAN.

126. After two (2) days of clearing the heavy and burdensome junk pile, Plaintiff AHMED began to feel severe pain in his back and stomach.

127. Plaintiff AHMED immediately contacted Defendants' claim department for workers compensation.

128. Defendants informed Plaintiff that he had suffered a double hernia and needed immediate surgery.

129. Plaintiff AHMED suffered severe emotional distress as a result of RYAN's directive that caused such a painful injury.

130. Plaintiff underwent surgery on or about April 21, 2015.

131. As a result of the surgery, Plaintiff AHMED was bed-ridden for nearly three (3) months and suffered from severe pain and depression.

132. Plaintiff AHMED returned to work on or about July 21, 2015.

133. Upon returning to work, Plaintiff AHMED found out that five (5) employees from his team had left or discussed leaving because of the hostile work environment of which RYAN subjected them.

134. Again, on numerous occasions in or around July 2015, RYAN visited The South Plainfield Store and completely ignored Plaintiff AHMED.

135. Plaintiff AHMED inquired with RYAN why she refused to speak to him.

136. RYAN repeatedly told Plaintiff, "You don't understand what I'm saying because of your language barrier. I want to make sure things are done my way, not the Egyptian way!"

137. Defendants discriminated against Plaintiff AHMED on the basis of his national origin, race, and religion.

138. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

139. At about the same time, Plaintiff AHMED was still suffering from depression and began to have difficulty sleeping.

140. On or about August 15, 2015, RYAN called Plaintiff AHMED on a Saturday afternoon regarding an issue with the temperature in the walk-in cooler.

141. Plaintiff AHMED told RYAN that he would take care of the issue immediately. RYAN instructed AHMED to call, "Reasonable Air."

142. Immediately thereafter, AHMED called "Reasonable Air" and scheduled the repair for the following day.

143. The following day, that Sunday (which was also AHMED's day off from work), a technician from "Reasonable Air" came and fixed the issue.

144. On or about Monday, August 17, 2015, RYAN called Plaintiff AHMED and yelled at him because he did not discuss the cause of the problem with the technician from "Reasonable Air."

145. RYAN said, "I can't fucking believe you! What is it with you fucking Egyptians? This is absurd!"

146. Defendants discriminated against Plaintiff AHMED on the basis of his national origin, race, and religion.

147. Defendants subjected Plaintiffs to a hostile work environment on the basis of their race, national origin, and religion.

148. After AHMED's conversation with RYAN, the owner of "Reasonable Air" called Plaintiff AHMED and apologized saying, "I'm sorry, I'm with [RYAN] and heard her screaming at you. Don't worry. You didn't do anything wrong - You did the right thing."

149. Around September 2, 2015, Defendants called AHMED for a meeting in The Edison Store. During the meeting, RYAN informed Plaintiff AHMED that Plaintiff HAFEZ had been terminated. Plaintiff AHMED was shocked.

150. Later that night, RYAN asked Plaintiff AHMED to meet her in the back of the store. RYAN instructed AHMED, "Mike Garland's way is not acceptable," then pointed at Plaintiff and said, "You will do things my way, and I don't care if you go and tell him."

151. After their discussion, RYAN made her best attempt to confront AHMED in a calm and rational tone, telling Plaintiff, "You know I like you. [Plaintiff HAFEZ] is complaining to Human Resources that I discriminated against his religion and that you have a problem too."

152. Plaintiff responded, "Yes, I do. You are always screaming at me."

153. RYAN responded, "I want to make sure you don't support [Plaintiff HAFEZ] in his claim or listen to him. That wouldn't be good for you."

154. AHMED did not engage RYAN's clear and direct threat against him, but instead informed RYAN, "I'll always tell the truth."

155. RYAN rolled her eyes and stormed away in anger.

156. Plaintiff felt intimidated and threatened by RYAN's comments. Plaintiff was unable to sleep that night as well.

157. Defendants coerced, intimidated, threatened and/or interfered with Plaintiff AHMED's attempt to exercise his protected rights under New Jersey State law.

158. Later that week, Plaintiff AHMED met with a doctor and discussed how the hostile work environment with RYAN was effecting him.

159. Plaintiff's doctor determined that the hostile environment led to Plaintiff's depression and lack of sleep. Plaintiff's doctor prescribed him anti-depressants and a sleep aid.

160. On or about September 16, 2015, RYAN instructed AHMED that Defendants'
     Director of Human Resources, HEATHER MATTHEWS (hereinafter referred to as
     "MATTHEWS"), and Defendants' Regional Manager, FRANK ZOLA (hereinafter
     referred to as "ZOLA"), were coming to investigate Plaintiff HAFEZ' complaint of
     discrimination and retaliation.

161. Plaintiff AHMED was aware of the fact that Plaintiff HAFEZ had mentioned him in
     his complaint. As a result, Plaintiff AHMED expected, and was looking forward to,
     the opportunity to discuss the egregious and malicious treatment of which RYAN
     had subjected them.

162. However, MATTHEWS and ZOLA came to The South Plainfield Store
     accompanied by RYAN and did not speak with Plaintiff AHMED regarding Plaintiff
     HAFEZ' complaint.

163. Defendants failed to conduct a proper investigation and did not address Plaintiffs'
     concerns.

164. On or about September 18, 2015, Plaintiff AHMED felt a sharp pain in his back.
     Plaintiff informed RYAN that he needed to seek medical treatment.

165. Plaintiff AHMED had an MRI conducted on September 18, 2015.

166. Plaintiff's doctor told him that he should refrain from any heavy lifting and allowed
     Plaintiff to attend work on light duty.

167. On or about September 26, 2015, RYAN visited The South Plainfield Store and
     ordered AHMED, "Move all the large and medium dough pans from the carts to the
     shelves."

168. Plaintiff AHMED told RYAN that he was still in extreme pain from his double hernia surgery, as well as the fact that his doctor recently ordered AHMED to refrain from any heavy lifting. AHMED asked RYAN for a reasonable accommodation and requested if another employee could move the dough.

169. RYAN refused to provide AHMED with this reasonable accommodation.

170. Plaintiff, alone, moved the dough - as RYAN watched, laughing while he struggled to complete the malevolent task.

171. Defendants discriminated against Plaintiff AHMED on the basis of his disability.

172. Defendants failed to accommodate Plaintiff AHMED on the basis of his disability.

173. Defendants subjected Plaintiff to a hostile work environment on the basis of his disability.

174. Defendants retaliated against Plaintiff for his complaint of discrimination and support of Plaintiff HAFEZ' complaint of discrimination.

175. Later that night, Plaintiff was in excruciating pain and was not able to sleep despite taking prescribed pain medication.

176. On or about September 28, 2015, Plaintiff arrived at work but had to leave early due to the severe pain in his back.

177. On or about September 29, 2015, Plaintiff went back to the hospital to pick up the results of his MRI. Plaintiff was informed that he was suffering, and continues to suffer, from a herniated disk in his back.

178. Plaintiff made an appointment with his doctor for the following day, September 30, and was unable to sleep that night.

179. On or about September 30, 2015, Plaintiff told RYAN that he had severe pain in his back and needed to see his doctor. As a result, Plaintiff would be unable to attend a managers meeting that was scheduled that night.

180. RYAN demanded that Plaintiff attend the meeting despite his pleas to seek medical attention for his herniated disk.

181. Defendants interfered with Plaintiff's attempt to exercise his protected right to take medical leave.

182. In fear of losing his job, Plaintiff AHMED attended the meeting.

183. RYAN told Plaintiff AHMED that next time he would need to bring a doctor's note proving his ailment.

184. Defendants discriminated against Plaintiff AHMED on the basis of his disability.

185. Defendants subjected Plaintiff AHMED to a hostile work environment on the basis of his disability.

186. Defendants interfered with Plaintiff's attempt to exercise his protected right to take medical leave.

187. Shortly thereafter, Plaintiff's back pain was so severe that he was forced to take a temporary medical leave from work.

188. In or around October 2015, Plaintiff expressed RYAN's egregious abuse with Defendants' Director of Human Resources, MATTHEWS. Plaintiff and MATTHEWS agreed that Plaintiff would return to work on October 17, 2015, and MATTHEWS assured Plaintiff that he would not be harassed or discriminated against moving forward.

189. On or about October 17, 2015, Plaintiff arrived at work as previously discussed with MATTHEWS.

190. Immediately upon entering The South Plainfield Store, Defendants' employee, PATRICIA FLACK (hereinafter referred to as "FLACK"), ordered Plaintiff to leave the store immediately or FLACK would call the police.

191. Plaintiff was stunned that Defendants continued to harass and discriminate against him.

192. Several minutes later, GARLAND arrived at the store and ordered Plaintiff to leave the premises.

193. Plaintiff AHMED became increasingly offended, intimidated and stressed by RYAN's behavior. Plaintiff was shocked that he was ordered to leave the premises and felt that Defendants' were toying with him in a sick and cruel manner.

194. Defendants retaliated against Plaintiff AHMED for his complaints of discrimination.

195. Shortly thereafter, Plaintiff spoke to MATTHEWS and explained to her what had happened.

196. No appropriate or reasonable actions were taken by Defendants and Plaintiff AHMED continued to work in a very negative and hostile work environment.

197. On or about November 7, 2015, Plaintiff AHMED was constructively discharged.

198. The above are just some of the examples of the pattern and practice of unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff AHMED.

## MATERIAL FACTS AS TO  PLAINTIFF AHMED ELSAFTI

199. Throughout Plaintiff ELSAFTI's employment, Defendants subjected him to numerous acts of *inter alia*, discrimination, retaliation and unlawful employment practices, including, but not limited to the following:

200. In or around February 2015, Plaintiff ELSAFTI began working for Defendants in their 5251 Stelton Road, South Plainfield, New Jersey location ("The South Plainfield Store").

201. Plaintiff AHMED was Plaintiff ELSAFTI's manager.

202. At all times material, RYAN was the Area Manager of the 5251 Stelton Road, South Plainfield, New Jersey location in which Plaintiff ELSAFTI worked.

203. On numerous occasions, Defendants discriminated against Plaintiff ELSAFTI on the basis of his national origin, race, and religion.

204. RYAN would repeatedly refer to Plaintiff HAFEZ, Plaintiff AHMED, and Plaintiff ELSAFTI as "brothers" which made Plaintiffs feel attacked and uncomfortable.

205. As mentioned above, Plaintiffs are all Egyptian and Muslim. There is a well-known terrorist organization in Egypt called the "Muslim Brotherhood." Plaintiffs were shocked and appalled that RYAN, aware of the fact that they were Egyptian and Muslim, would refer to them as "brothers", clearly insinuating their membership to a known terrorist group.

206. In fact, there were several Hispanic employees in both Plaintiff HAFEZ' and Plaintiff AHMED's stores. However, RYAN never referred to any of the Hispanic employees as "brothers."

207. On numerous occasions, RYAN visited The South Plainfield Store and told Plaintiff ELSAFTI, "You don't understand what I'm saying because of your language barrier." In addition, RYAN instructed Plaintiff ELSAFTI, "This is America, not Egypt. Speak English!"

208. Defendants discriminated against Plaintiff ELSAFTI on the basis of his national origin, race, and religion.

209. On or about September 28, 2015, Plaintiff ELSAFTI was constructively discharged.

210. RYAN abused her power as Plaintiffs' immediate supervisor.

211. Plaintiffs felt emotionally overwhelmed, depressed and anxious.

212. Defendants' actions and conduct were intentional and intended to harm the Plaintiffs.

213. Plaintiff HAFEZ was terminated as a result of Defendants' conduct and failure to take appropriate action.

214. Plaintiff AHMED was constructively discharged as a result of Defendants' conduct and failure to take appropriate action.

215. Plaintiff ELSAFTI was constructively discharged as a result of Defendants' conduct and failure to take appropriate action.

216. The above are just some of the examples of the pattern and practice of unlawful discriminatory and retaliatory conduct to which Defendants subjected Plaintiff ELSAFTI.

217. As a result of Defendants' actions, Plaintiffs felt extremely degraded, victimized, and emotionally distressed.

218. As a result of Defendants' discriminatory and intolerable treatment, Plaintiffs suffered and continue to suffer severe emotional distress and physical ailments.

219. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

220. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demands Punitive Damages against all Defendants jointly and severally.

221. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected the Plaintiffs.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. SECTION 1981
## (AGAINST ALL DEFENDANTS)

222. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

223. 42 U.S.C.A. Section 1981 states in relevant part as follows:

"Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981.

224. Defendants discriminated against HAFEZ, AHMED, and ELSAFTI, as members of the Egyptian race, in violation of the rights afforded to them by 42 U.S.C. §1981.

225. By the conduct described above, Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens, to the creation, performance, enjoyment, and all benefits and privileges of their contractual relationship with Defendants, in violation of 42 U.S.C. §1981.

226. As a result of Defendants' discrimination in violation of Section 1981, as members of the Egyptian race, Plaintiffs have been denied the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship which provided substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiffs to compensatory damages.

227. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiffs, thereby entitling Plaintiffs to an award of punitive damages.

228. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## TITLE VII
## (AGAINST THE "PIZZA HUT" DEFENDANTS)

229. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

230. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

231. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiffs to discrimination on the basis of their national origin, race, and religion, together with causing a hostile work environment based on the same.

232. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR RETALIATION UNDER
## TITLE VII
## (AGAINST THE "PIZZA HUT" DEFENDANTS)

233. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

234. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

235. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

236. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION UNDER NEW JERSEY STATE LAW DISCRIMINATION (AGAINST ALL DEFENDANTS)

237. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

238. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows:

"It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual,

or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

239. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 *et seq.*, by discriminating against the Plaintiffs because of their national origin, race, and religion,  together with causing a hostile work environment based on the same.

240. Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

241. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

<u>**AS A FIFTH CAUSE OF ACTION**</u>
<u>**UNDER NEW JERSEY STATE LAW**</u>
<u>**RETALIATION**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>

242. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

243. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

"For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a

complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

244. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 *et seq.*, by retaliating and otherwise discriminating against Plaintiffs, including, but not limited to, terminating Plaintiffs' employment, because of Plaintiffs' opposition to Defendants' unlawful employment practices.

245. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION UNDER NEW JERSEY STATE LAW AIDING AND ABETTING (AGAINST ALL DEFENDANTS)

246. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

247. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice:

"For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

248. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 *et seq.*, by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

249. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(ON BEHALF OF PLAINTIFF AHMED ONLY - AGAINST ALL DEFENDANTS)**

250. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

251. Plaintiff AHMED claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

252. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

253. Defendants violated the section cited herein by failing to accommodate Plaintiff AHMED's request for reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability.

254. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the ADA.

255. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (ON BEHALF OF PLAINTIFF AHMED ONLY - AGAINST ALL DEFENDANTS)

256. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

257. Plaintiff AHMED claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

258. SEC. 12203. [Section 503] states,

"(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

259. Defendants engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff AHMED with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

260. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### JURY DEMAND

Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. §1981, the ADA, and the New Jersey Law Against Discrimination,

and that Defendants harassed and discriminated against Plaintiffs on the basis of their race, national origin, religion, and disability, together with creating a hostile work environment, retaliation and wrongful termination;

B.   Awarding damages to the Plaintiffs, retroactive to their dates of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation;

D.   Awarding Plaintiffs punitive damages against all Defendants, jointly and severally;

E.   Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Very truly yours,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiffs*

Dated: September 15, 2016
        New York, New York

By: _____
     Zack Holzberg, Esq.
     30 Broad Street, 35th Floor
     New York, New York 10004
     (212) 587-0760